HAGEDORN, J. (dissenting).
¶11 The parties in this case entered into a contract (the MSA) requiring that James maintain his life insurance policy and that his children be "named as sole and irrevocable primary beneficiaries" on that policy until they become adults. James did not maintain the insurance required by the contract, instead naming his new wife as beneficiary, thus violating the MSA's life insurance requirement. This is a common fact pattern in our case law. And prior cases have held that a constructive trust can be an appropriate remedy in this situation.
¶12 What is unique to this case, however, is that the MSA provided a remedy for this failure. The MSA states:
If either party fails for any reason to maintain any of the insurance required under this article, there shall be a valid and provable lien against his or her estate in favor of the specified beneficiary to the extent of the difference between the insurance required and the actual death benefits received.
The parties debated before the circuit court whether this was an exclusive remedy or not. The circuit court ultimately concluded it was.
¶13 What happened next, however, is something the majority and I disagree on. The majority buys Joan's argument that the circuit court's decision was legal error, framing it as the mistaken "belief that it was required to find ambiguity in the MSA in order to impose a constructive trust." Majority, ¶5. To be fair to the majority, the circuit court could have been a bit more clear. But I read the circuit court's decision differently, and generally, we search for reasons to uphold these sorts of discretionary decisions. Roy v. St. Lukes Med. Ctr. , 2007 WI App 218, ¶11, 305 Wis. 2d 658, 741 N.W.2d 256.
¶14 The circuit court believed that the kind of injustice necessary to trigger imposition of a constructive trust was dependent on whether the contractual terms left open that sort of remedy. This is not an improper analysis. In Duhame v. Duhame , 154 Wis. 2d 258, 261-64, 453 N.W.2d 149 (Ct. App. 1989), a case with similar facts involving life insurance proceeds and a beneficiary change, this court focused on the language of the contract to determine the intent of the parties and the nature of the bargain that was struck in the divorce stipulation. I read the circuit court as doing a similar thing here. But again, unlike in the cases cited by the majority, this MSA contained a remedy. Thus, the court believed no real "injustice"-one of the requirements for a constructive trust-would occur by simply enforcing the agreement. In short, I read the circuit court as saying that the parties struck a bargain and included a remedy provision as part of that bargain. There is no reason to disturb that bargain unless it has some wiggle room. Said another way, enforcing the MSA as written, including the remedy provision, is ensuring the intent of the parties is carried out-and therefore, would not constitute the requisite unjust enrichment and unfairness necessary to trigger imposition of a constructive trust.
¶15 The circuit court's interpretation of the MSA appears correct. Changing the beneficiary was a fundamental failure to "maintain ... the insurance required" on behalf of the children. The MSA then prescribes a remedy that "shall" take place-a lien. Other potential remedies exist-including the common remedy of a constructive trust-but are not named. Nor does the provision include a catchall like, "and any other remedy that would effectuate the parties' intent." It is a limited remedy, one that in many situations might not make the children whole. And again, it is worth noting that imposing a constructive trust in cases just like this is common and replete in our case law. Thus, the MSA's mandatory lien language does not make much sense if other remedies could be pursued instead of a lien.
¶16 At its heart, the circuit court was asked to engage in a basic fairness analysis. And that is exactly what it did. The circuit court read the MSA and determined that fairness here would be to hold the parties to their bargain. The circuit court was well aware that this was an imperfect remedy for the children and could mean they may never see a dime of the insurance proceeds they should have received. But the circuit court determined that it was appropriate and just to hold the contracting parties to the terms they negotiated-for better or for worse.
¶17 As the majority acknowledges, this decision is one that, under our law, is left entirely to the discretion of the circuit court. Our review is limited to determining whether that decision is reasonable-the kind of judgment a reasonable judge could reach. Even if one might disagree, the circuit court's decision was eminently reasonable and appropriate and did not, in my read, rest on an incorrect legal basis. Holding the parties to their bargain is, at the very least, a sensible way to balance the equities.
¶18 While ostensibly grounding the decision as one of legal error, some parts of the majority opinion go even further. The majority asserts that "creation of a constructive trust in favor of the children" is required as a matter of law. Majority, ¶10. There are two problems with this. First, the circuit court left unaddressed whether Joan even had the power to ask for a constructive trust on behalf of the children. The majority does not address that issue, but skips right over to impose a constructive trust anyway-assuming the answer to an important legal prerequisite. The second problem is that instead of remanding to the circuit court to make a discretionary determination, this court just makes the determination itself. But the circuit court said that if we remanded, it would have a trial to ensure that the full intent of the parties and other considerations regarding the beneficiary change could be considered. To conclude that imposition of a constructive trust is legally required , and to do so even though the circuit court never held a hearing to determine the relevant underlying facts or even whether Joan had the ability seek this remedy for her children in the first place, is an extraordinary holding by a court charged only with reviewing the circuit court's exercise of its equitable judgment.
¶19 In the end, I believe the majority misreads the circuit court's decision, and then fails to apply our standard of review with the aim of achieving an outcome it feels is more just. If the majority's view of the circuit court's decision is correct-that it was an exercise of discretion based on an improper view of the law-the proper remedy would be remanding to the circuit court. The majority's much more brazen approach is based on its view of the just outcome. But what justice requires before us is staying in our lane, applying the law, and letting the circuit court exercise its own discretion. Because the majority does not do so, I dissent.